WILLIAM PAGE *&* *als.* *versus* DENNETT WEYMOUTH, and
THOMAS NELSEN, *Trustee.*

The statutes, relating to an assignment by an insolvent debtor of his pro-
perty, in trust, for the benefit of such of his creditors as shall become parties
thereto, prescribe no particular form in which it shall be made; and any
instrument, the provisions of which will render effectual the purposes of the
law, should be upheld as a valid assignment.

And where there is no suggestion of fraud, an assignment will not be deemed
invalid, because the debtor and his assignee executed, at the same time,
three instruments of assignment, alike in all respects, each of whom retained
a copy, and the third was delivered to their attorney, who was also the
attorney of several of the creditors.

Also, *held,* that the creditors signing the part taken by the attorney, as well
became parties to the assignment, as those executing that in the hands of the
assignee.

Before the R. S. of 1857 took effect, the time allowed to creditors to become
parties to an assignment was three months *after* the publication of notice,
and not *from* the date of the assignment.

From the computation of time, the day of publication should be excluded;
*after* and *from* being words of exclusion.

THIS case is presented on plaintiffs' EXCEPTIONS to the
ruling, *pro forma,* of MAY, J., presiding at *Nisi Prius,* dis-
charging the trustee on his disclosure.

From the disclosure of the trustee, it appears that, on May
11th, 1857, Weymouth, the principal defendant, assigned to
him in trust all his property, for the benefit of such of his
creditors, as should, within the time limited by statute, be-
come parties to the assignment. That he accepted the trust,
filed his bond, published notice, and in all other respects com-
plied with the requirements of the statutes relating to such
assignments.

The trustee further states that, before the expiration of
three months *from the date of the assignment,* sundry creditors
of said Weymouth, whose demands amount to $6,780, became
parties thereto; that, on the 20th day of August, 1857, and
after the expiration of the three months, Z. Hyde & Company,
creditors of said Weymouth, claimed the right to become a
party to the assignment, and signed the same.

It also appears that, on the said 11th day of May, there were three instruments, in all respects the same, executed by the assignor and the assignee, on each of which was a certificate of the same magistrate, that the assignor then took the oath required by the statute.

In his disclosure, the trustee further states,—"all the instruments were executed at the same time. It was one instrument in three parts. One part of the instrument was taken by Weymouth, one by me, and the other by a third person, acting as attorney for Weymouth, myself and the creditors.

"I have in my possession two parts, on which are the signatures of the creditors.

"I cannot say how long it was after the 20th day of August, 1857, before the assignment which is signed by the creditors, other than Z. Hyde & Co., came into my possession. I think it was after the service of the writ on me in this case, and before the entry of the action at January term, 1858."

The writ is dated November 23d, 1857, and on the same day was served upon the trustee. The first publication of notice by the assignee was in a newspaper of the date of May 20th, 1857. Swanton & Jameson, partners, under the name of Z. Hyde & Co., were the only creditors or firm that executed the assignment that was in the hands of the trustee.

*W. Hubbard,* in support of the exceptions.

If three assignments may be made and be legal, any number may be. If a signature to any one of these makes a party to the assignment, then it is clear that the creditors may be deprived of the knowledge whether there is a general assent of the creditors, or a general refusal by them to become parties, to enable a creditor to judge whether he will become a party.

The law designed that there should be some place where a creditor should be *legally* entitled to call and see the assignment. The Act of 1849, c. 113, § 4, required the assignee to file a copy of the assignment in the Probate office. This implies that he was to have possession of the original. By

the first section of that Act he was required to make return into the Probate office of the names of all creditors, who have become parties to the assignment, together with a list of their respective claims. This not only implies, but requires a *personal knowledge* on his part, only to be obtained by possession of the assignment, and by a knowledge that the signatures were really made and the claims asserted. This is to be made on *oath*, and necessarily implies such personal knowledge.

There can be but one legal assignment or instrument, and that, in the contemplation of the law, is to be in the hands of the assignee.

The statutes speak of assignment, in the singular number; and do not contemplate the possibility of several original instruments. The fact, which is admitted, that neither the copy taken by the assignor nor that taken by the attorney of the assignor, and of the assignee, and of sundry creditors, ever came into the possession of the assignee, until nearly three months after the time he was obliged to make the return, on oath, of the list of creditors who had become a party to the assignment, and the amounts respectively claimed, shows that they cannot be regarded as such instruments in the sense of the statute, for they were not in the assignee's hands when he was bound to make his return to the probate office; and therefore the creditors to either of them should have been excluded in his return.

All others than the one in the possession of the assignee can only be regarded as copies of the assignment. And if so, can one become a party to an assignment by signing a copy of it? The statutes do not authorize such a course, and the assignee could not properly make his return from such documents.

If the assignment which was in the hands of the assignee, to which Hyde & Co., became a party, is not the *only* legal assignment, then all the assignments are void.

The assignment was made on the 11th day of May, 1857; the first publication of it was on the 20th day of the same

month, and, on the 20th day of August following, Z. Hyde & Co., as creditors of the assignor, executed the assignment in the hands of the assignee.

This was *within* three months *from* the publication of notice, the time allowed by law prior to the operation of the R. S. of 1857.

The Act of 1844, c. 112, § 1, provides for an equal distribution of the debtors' estate " among such of their creditors as, *after notice as herein provided, become parties.*" By the 3d sec. it is provided " that, within fourteen days after the assignment shall have been made as aforesaid, public notice thereof shall be given, in some newspaper, * * * * *allowing three months to all creditors to become parties to said assignment.*"

It is provided in the next section, (§ 4,) that the assignee shall not be liable to the trustee process, nor the property liable to attachment " until the expiration of the three months *from* the publication of the notice aforesaid."

In contemplation of law, the creditors are to have three months, within which time they may become parties to the assignment. *Not three months from the date of the assignment,* but three months *after notice* of it.

The property is not attachable, nor subject to trustee process, until the expiration of three months from publication.

The word " from" is a word of exclusion of the day of publication, to ascertain when the three months expired.

So, in the additional Act of 1849, c. 113, § 5, the time for attachment, and for the trustee process, is enlarged from three to six months "*from* the publication of notice, as required in the Act to which this is additional."

An assignment in favor of creditors that should, " within sixty days *from* the date of the said instrument," execute a release, was held to *exclude* the day of the date from the computation of the sixty days. *Pierpont* v. *Graham,* 4 Wash. C. C., 232.

As to the computation of time, *vide Windsor* v. *China,* 4 Greenl., 298; *Bragdon* v. *Wilson,* 1 Pick., 485; *Jackson* v. *Van Volkenburg,* 8 Cow., 260.

*Ingalls, contra,* argued :—that, as the statute prescribed no particular form to be observed in making a valid assignment, any mode would be sufficient, if the provisions of the instrument will give effect to the purposes designed by the statute to be accomplished.

The design of the statute was to provide for an equal distribution of an insolvent debtor's property *pro rata* among all his creditors, who should elect to become parties to the assignment, without preferring any; and to give greater security to the creditors, that all his estate, not exempted from attachment, should pass into the hands of the assignee. There is nothing in the statutes indicating an intention to change the mode, which, before these enactments, had been adopted of making an assignment, which was by an indenture of three parts. *Ward* v. *Lewis,* 4 Pick., 518.

Such a mode works no wrong to any party; not only gives effect to the law, but facilities which are not afforded, if the assignment be not by an instrument, tripartite.

The firm of Z. Hyde & Co., did not legally become a party to the assignment. They did not signify their assent to the provision therein made for them, within three months from the date of it, as the statute contemplates. The Legislature could not have intended to leave the time to become a party uncertain, as would be the case, if the three months are computed from the time of publication of notice.

But whatever construction may be given to the statute on this point, the adjudication that the trustee be discharged cannot be affected by it, inasmuch as the amount of the debts of the creditors, becoming parties within three months from the date of the assignment, vastly exceeds the amount he discloses in his hands *in trust* as assignee.

The opinion of the Court was drawn up by

MAY, J.—The trustee claims the property in his possession by virtue of an assignment from the principal defendant, made on May 11th, 1857, for the benefit of creditors. No objection is made to it on account of any of its provisions.

Its phraseology is such as to secure the precise objects and purposes which the statute requires; and there is no doubt but that the assignee has done and performed all the statute duties which were devolved upon him by the acceptance of the trust.

Still, it is claimed by the plaintiff that said assignment is void, upon the ground that the manner of its execution, and the circumstances attending, are not a reasonable compliance with the statute which authorizes a debtor to make an assignment for the benefit of his creditors. The objection, and the only one which has been urged against it, lies in the fact that, when it was executed by the principal defendant and trustee, it was made to consist of three parts, all signed by both parties at the same time, and each part being an exact transcript of the others. The proper oath is duly certified upon each part. At the time of the execution, one part was taken by the assignee, one by the assignor, and the other was left with one acting as the attorney of all the parties thereto. That part which was left with the attorney was, subsequently, but within three months from its date, duly executed by eight individuals and firms as creditors of the assignor, and that part taken by the assignee received the signature of no creditor until it was signed by the firm of Zina Hyde & Co., on the 20th day of August after, which was not within three months from its date, but was within three months from the time of the publication of the notice then required by the provisions of the statute of 1844, c. 112, § 3.

The question was discussed, by counsel at the argument, whether this signing was in season to constitute the firm of Zina Hyde & Co., legal parties to the assignment, and, although the determination of this question may not be necessary to a decision of the question before us, it may not be improper to say, for the purpose of preventing future litigation, that, in our judgment, the notice which is required by the provisions of the third section of the statute just referred to, and which is to be given within fourteen days after the making of the assignment, is to allow three months to all creditors to become

parties thereto.    The evident intention was to give three months notice.

The publication of the notice appears to have been on May 20, 1857.    In computing the time, the day of its date is properly to be excluded.    The signing of Zina Hyde & Co., was, therefore, in season under the statute then in force.    By the Revised Statutes of 1857, it would have been too late.

That part of the assignment which was taken by the assignor does not appear to have received the signature of any creditor.

In view of the foregoing facts, our inquiry now is, was this tripartite assignment valid ?    The statute has prescribed no form.    It requires only such an instrument as will perfect its object.    It evidently contemplates but one assignment, but, upon the question, whether this may or not consist of various parts, it is silent.    If an assignment in three parts will fairly effectuate the purposes of the statute, then ·it will be valid, notwithstanding an assignment consisting of but one part may be equally effectual.    The question is not, therefore, which is the better mode, but whether the mode adopted in the case before us is a legal mode.

It is contended, with much force, that notwithstanding an assignment is to provide for three parties and to contain provisions in favor of each, still it ought to consist of but one part; and, it may be, that such an instrument, a copy being left in the Probate office for the benefit of all who may be interested in it, would be amply sufficient to secure the rights of all.    It is also said that an instrument which is tripartite is irregular, leading to confusion and likely to deceive; and that a creditor, who wishes to become a party to it, has the right to know what creditors have become a party to it, because such knowledge would be likely to influence his own action.    Undoubtedly, the amount which any creditor would receive, in the distribution of the debtor's estate, would depend upon the number of creditors who should become parties, and the amount due to each.    But such knowledge is not contemplated as appearing upon the face of the assign-

ment, by the statute. Those who first become parties cannot, in the nature of things, know who will subsequently become such. Each creditor acts for himself, and acts upon such information as he may chance to obtain, in regard to the number of creditors and the amount of their debts. If no fraud is practiced upon him, he has no right to complain, and if he becomes a party to the assignment, he must be bound by it. It is not perceived how the last creditor who becomes a party, is, of right, entitled to any more information than those who preceded him, or how, if such information be, without fraud or accidentally, withheld from him, his rights can be affected thereby. If he desires such information, and, by inquiry, seeks it, and it is fraudulently withheld, a different question would be presented.

By the statute of 1849, c. 113, § 1, it is made the duty of the assignee, within ten days from and after the time allowed for creditors to become parties to such assignment, not only to return into the Probate office a true inventory of all the property that has come into his hands, but also the names of all the creditors who have become parties to the assignment, with a list of their respective claims. The validity of each and every claim, and its justness, may be legally established, if the assignee so desires. Under such circumstances, it is difficult to apprehend how any creditor, who becomes a party, can sustain any legal injury by his lack of knowledge as to what creditors have become parties before him; or what injustice is done to him, if he supposed, when he became a party, that no other creditor had or would become so, if it subsequently turns out that there are many others to share with him in that equitable distribution of the debtor's estate, which the statute, in such case, was designed to give to all the creditors alike. While, therefore, as a matter of convenience, it may be expedient that an assignment with one part only should be made, and that should be kept in one place, open to all who may be interested therein, we are unable to see, in the fact that it is not so, any evidence of fraud or unfairness, which should render it void.

It may be that some advantages will be found in an assignment that is tripartite, over one that is not. That the assignor should have one part in his hands seems to be peculiarly appropriate and proper. It may be necessary for his security and the protection of his rights. Suppose that the assignee, after having accepted the trust, should fail to give a bond, and, having taken the assignor's property, should refuse to give any notice or to act at all, yet still holding the property and refusing to give it up, would not the assignor be safer with a part in his own hands than with an assignment of one part only, and that in the hands of the assignee?

It is not perceived how the fact that the assignee has two parts of the assignment duly executed by him and the assignor, in all respects alike, one in his own hands and the other in the hands of his attorney, can render the assignee less liable to any creditor who becomes a party, whether by signing the one or the other, than he would have been, if the assignment had been made with one part only; nor is it perceived why such creditor does not as effectually express his assent to the assignment, and bind himself, by affixing his signature and seal to the one as to the other.

In the case of *Ward & al.* v. *Lewis,* 4 Pick., 518, an assignment by an insolvent debtor, in trust for his creditors, by an indenture of three parts, was regarded and upheld without question as valid. We see no distinction between such an assignment, so far as relates to its form, and one under our statute. The practice of making assignments in this manner, we think, will be found to have prevailed to some extent in this State.

An assignment is but a contract between the several parties to it. From the nature of such an instrument, it would seem to be proper that each party should have it in his possession, and, notwithstanding the inconveniences which have been suggested as growing out of a multiplicity of parts, we cannot doubt that an assignment in the form of an indenture is valid. When an instrument is to contain a contract between several parties, and covenants by and in favor of each, there seems

to be no legal reason why there may not be as many parts as parties. Hence, formerly the mode of securing the rights of each party in such a case, so far as the selection of the instrument was concerned, was by several instruments exactly alike, which was called an indenture. This mode was selected because a deed-poll was not, strictly speaking, an agreement between two persons; but a declaration of some one particular person, respecting an agreement made by him with some other person. See Bouvier's Law Dic., vol. 1, under the words, deed-poll and indenture.

It is not to be denied, however, that in our practice the strictness which was formerly observed in regard to the use of these several instruments has been very much relaxed; and, in our judgment, an assignment under our statute, if made and executed in either mode, without fraud, will be binding. The result is, that the trustee is entitled to retain the property disclosed, to be applied by him to the purposes for which it was assigned. He must, therefore, be discharged.

*Exceptions overruled.*

TENNEY, C. J., and RICE, APPLETON and DAVIS, JJ., concurred.

NOTE BY DAVIS, J. — The assignment in this case is not, strictly, tripartite. Neither part refers to any other. Each purports to be the only assignment.

And yet that does not make the assignment void. If they had not been executed at the same time, the *first* would have been valid; and the others might have been invalid, because the assignor, after executing the first, had nothing left. But by executing several at the same time, he, and the assignee, are estopped from denying the validity of either. And, in the absence of fraud, such an assignment will be good; and all who become parties by signing either copy, will be entitled to share in the proceeds.

If a debtor should execute several composition deeds, all of the same date and tenor, and distribute them among his creditors, to be executed by them severally, there can be no doubt but that they would be held valid as one contract on his part, and binding on all creditors who should become parties. The assignment in this case is valid for the same reasons.

There might be some difficulty, in case all the copies were not returned to the assignee immediately upon the expiration of the time for the creditors to become parties thereto, in making his return to the Probate office. But no such difficulty has arisen in this case. And though I have no doubt it was

intended by the statute, that there should be but one copy of the assignment, and that such a course would be safer, and better; I see no reason in this case why the assignment should not be sustained.